FILED
CLERK
1/2/2014 3:19 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------- X
SHEET METAL WORKERS' NATIONAL
PENSION FUND; NATIONAL ENERGY
MANAGEMENT INSTITUTE COMMITTEE
FOR THE SHEET METAL AND AIR
CONDITIONING INDUSTRY; SHEET METAL
OCCUPATIONAL HEALTH INSTITUTE
TRUST; INTERNATIONAL TRAINING
INSTITUTE FOR THE SHEET METAL AND
AIR CONDITIONING INDUSTRY; and
NATIONAL STABILIZATION AGREEMENT
OF THE SHEET METAL INDUSTRY FUND,

**MEMORANDUM OF
DECISION AND ORDER**
12-CV-3553 (ADS)(WDW)

                                    Plaintiffs,

    -against-

ACCRA SHEETMETAL, LLC., and ORLANDO
STOKES, as an individual,
                                  Defendants.

-----------------------------------------------------------X

## **APPEARANCES:**

**Jeffrey S. Dubin**
*Attorney for the Plaintiffs*
464 New York Avenue, Suite 100
Huntington, New York 11743
   By: Jeffrey S. Dubin, Esq.
       Doreen Nanda, Esq., Of Counsel

**Muhammad Ikhlas, Esq.**
*Attorney for the Defendants*
100 Church Street, 8th Floor
New York, New York 10007

**SPATT, District Judge.**

      On July 18, 2012, the Plaintiffs Sheet Metal Workers' National Pension Fund ("Pension

Fund"); National Energy Management Institute Committee for the Sheet Metal and Air

Conditioning Industry ("NEMIC"); Sheet Metal Occupational Health Institute Trust

("SMOHIT"); International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"); and National Stabilization Agreement of the Sheet Metal Industry Fund ("SASMI," and collectively, the "Plaintiffs" or the "Benefit Funds") commenced this action against the Defendants Accra Sheetmetal, LLC. ("Accra"), and Orlando Stokes, as an individual ("Stokes," and collectively, the "Defendants"). The Plaintiffs are five, multi-employer, employee benefit plans which, pursuant to § 502 of the Employment Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, seek to enforce the obligations of the Defendants to make contributions to these plans and for interest, additional interest, pre-litigation liquidated damages (late fees), reasonable attorney's fees and the costs of this action. In addition, the Plaintiffs allege that the individual Defendant Stokes breached his fiduciary obligations. According to the Plaintiffs, the Defendants owe approximately $24,221.39.

Presently before the Court is the Plaintiffs' unopposed motion for summary judgment. For the reasons set forth below, the motion is denied without prejudice with leave to renew upon a more complete summary judgment record.

## I. BACKGROUND

As indicated above, the Plaintiffs are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3). In this regard, they provide pension and other employee benefits to thousands of sheet metal workers and their families located throughout the United States.

The Defendant Accra is a limited liability company, organized under the laws of the State of New York, and is a closely held entity. It is considered an employer within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5). The Defendant Stokes is the principal owner of Accra and

exercised control over its activities and operations. He signed or caused to be signed most of Accra's checks and directed the transfer of money between Accra's accounts.

Pursuant to two Collective Bargaining Agreements ("CBAs"), Accra agreed to provide contributions to the Benefit Funds for certain hours worked by the participants it employed. The first CBA covered the period of August 1, 2009 to July 31, 2011 and the second CBA covered the period of September 15, 2011 to July 31, 2014. The CBAs stated that "contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing said [Benefit] Funds shall be vested in and remain exclusively in the Trustees of the respective [Benefit] Funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer." (Compl., ¶ 11; Amend. Ans., ¶ 1; Dubin Decl., Exh C and D.)

The CBAs also incorporated by reference the provisions of the Benefits Funds' Agreements and Declarations of Trust. Those Agreements and Declarations of Trust provided that "[i]f an Employer fails to pay the required Contributions and submit accurate supporting remittance reports within five days of the due date, that Employer will be liable for liquidated damages [also known as "pre-litigation liquidated damages" or "late fees,"] equal to the greater of 10% of the delinquent Contributions or $50.00." (Compl., ¶ 12; Amend. Ans., ¶ 1.)

While these CBAs were in full force and effect, Accra employed persons who were participants in the Benefits Funds within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) and these employees performed work that was covered by the contracts. In addition, Stokes exercised "authority or control respecting management or disposition" over certain assets of the Benefit Funds, as defined by 29 U.S.C. § 1002(21)(A), and determined (1) whether Accra made contributions to the Benefits Funds; (2) whether Accra's contributions were timely; (3) whether

3

Accra used assets of the Benefits Funds to pay for Accra's other obligations; and (4) whether Accra transferred assets of the Benefits Funds to himself.

According to the Plaintiffs, Accra owes pre-litigation liquidated damages to them for the period of June 1, 2011 through October 31, 2011. (Compl., ¶ 13.) The Plaintiffs also claim that Accra was supposed to make contributions to the Benefits Funds for the period of November 1, 2011 through May 31, 2012. (Compl., ¶ 16.)

The Defendants admitted to all the above-mentioned allegations in their Amended Answer. (Amend. Ans., ¶ 1.) However, the Defendants denied that the Plaintiffs were entitled to the judgments, remedies and compensation that they enumerated in their Complaint; that is, the Defendants deny that the Plaintiffs are entitled to (1) $10,029.58 in unpaid contributions; (2) interest of 8.5% on the unpaid contributions from the first day of the month when payment was due to the date when payment is made; (3) additional interest of 20% on the unpaid contributions totaling $7,001.72; (4) pre-litigation liquidated damages, or late fees, totaling $4,444.87; and (5) reasonable attorney's fees and costs. (Compl., "WHEREFORE ¶"; Amend. Ans., ¶ 6.)

On June 17, 2011, prior to bringing the present action, the Plaintiffs had commenced another, separate ERISA action against the Defendants ("Accra I") in which they also sought to enforce the Defendants' obligations to make contributions to the Benefit Funds. (See E.D.N.Y. Case No. 11-CV-2931.) Thereafter, on October 24, 2011, the parties entered into a settlement stipulation and order (the "Settlement Stipulation Agreement") that was subsequently "so ordered" by this Court on November 9, 2011. As part of the Settlement Stipulation Agreement, the Defendants agreed that under the first CBA, for the period of February 1, 2011 through July 31, 2011, they owed the Plaintiffs contributions totaling $30,590.01, plus additional interest in the amount of $1,018.30; late fees in the amount of $2,222.41; liquidated damages in the amount

4

of $3,500.87; and attorney's fees and costs in the amount of $2,854.91. However, the Defendants defaulted with regard to the Settlement Stipulation Agreement and on March 7, 2013, the Court granted the Plaintiffs' motion for entry of judgment, thereby granting the Plaintiffs (1) the full amount agreed to under the Stipulation, which was 45,909.78 less $20,093.22 for payments made pursuant to the Stipulation, for a total amount of $25,816.56 and (2) interest on the $25,816.58 award at the rate of 8.5% per annum from June 1, 2012 until July 18, 2012, for the total amount of $288.58.

While Accra I was pending, on July 18, 2012, the Plaintiffs commenced the present action. Eleven months later, on June 10, 2013, the Plaintiffs filed the instant motion for summary judgment. Pursuant to 29 U.S.C. § 1132(g), the Plaintiffs seek a judgment holding the Defendants jointly and severally liable for ERISA contributions amounting to $10,029.58, with (1) interest at the rate of 8.5% from November 1, 2011 through July 13, 2012 in the sum of $2,745.22; (2) liquidated damages of $7,001.72; (3) attorney's fees of $15,177.50; and costs of $515.00, all totaling $35,469.02. Although their opposition papers were due by July 1, 2013, the Defendants neither filed nor served any opposition to the Plaintiffs' motion. To date, the Defendants have not opposed the Plaintiffs' motion for summary judgment.

## II. DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Globecon Group, LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 170 (2d Cir. 2006). In

determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party may not then rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477, U.S. 242, 249–50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted).

**B. As to the Plaintiffs' Entitlement to Summary Judgment**

Where, as here, a motion for summary judgment is unopposed, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). Accordingly, the Court turns to the issue of whether the Plaintiffs have provided sufficient evidence to substantiate the factual assertions with respect to the Defendants' obligations under ERISA.

In support of their motion for summary judgment, the Plaintiffs have provided the 2009 to 2011 and 2011 to 2014 Collective Bargaining Agreements ("CBAs") in which Accra agreed to

6

contribute to the Benefit Funds for certain hours worked by participants which it employed. The Plaintiffs also provided the Defendants' Amended Answer, whereby the Defendants admitted that they entered into the abovementioned CBAs and that Accra employed people who were participants in the Benefits Funds and who performed work which was covered under those agreements. The Defendants have not responded to this evidence; have not introduced any evidence on their own behalf; and, as stated above, have not otherwise opposed summary judgment.

Nevertheless, the burden of proof in an ERISA action lies first with the Plaintiff Benefit Funds to "establish a prima facie case by demonstrating the inaccuracy of the employer's contributions." Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc., CV–92–2076(JMA), 1993 WL 120081, at *1 (E.D.N.Y. March 30, 1993) (citing Brick Masons Pension Trust v. Indus. Fence & Supply, Inc., 839 F.2d 1333, 1338 (9th Cir. 1988); Combs v. King, 764 F.2d 818, 825 (11th Cir. 1985)). See also Trs. of Local 807 Labor–Mgmt. Health & Pension Funds v. River Trucking & Rigging, Inc., No. CV–03–3569JMA, 2005 WL 2290579, at *5 (E.D.N.Y. Sep. 20, 2005) ("Courts have utilized a burden shifting framework in cases where a benefit fund challenges the contributions owed by an employer. First, the Funds must establish a prima facie case by demonstrating the inaccuracy of the employer's contributions. Once the Funds produce this evidence, the burden then shifts to the employer to produce evidence of the precise amount of work performed or evidence that the assumptions underlying the audit are incorrect.") (citations omitted). Thus, in the present case, the Plaintiffs must show that Accra's contributions were inaccurate or unpaid.

However, a review of the record reveals that the Plaintiffs present no evidence concerning which employees Accra failed to make contributions for or how many hours these

employees worked. Indeed, except for attorney's fees and costs, the Plaintiffs fail to offer any explanation as to how they reached their calculations with respect to the alleged unpaid contributions owed by the Defendants to the Benefit Funds. Instead, the Plaintiffs have only provided the Court with copies of the CBAs and the Benefits Funds' Agreements and Declarations of Trust, which outline the Defendants' obligations but do not demonstrate how the Defendants failed to meet these obligations. As a consequence, the Court cannot assess the accuracy of the Plaintiffs' claims for relief.

Further, while the Defendants in their Amended Answer did admit that they failed to make certain contributions to the Benefit Funds, they also contested the specific relief sought by the Plaintiffs. Therefore, although the Plaintiff's motion for summary judgment is unopposed, the Court is unable to render judgment as a matter of law in favor of the Plaintiffs since they failed to meet their burden of proving that no material fact remains for trial, namely the amount of the benefits due and owing.

Based on this record, the Court finds that the Plaintiffs have failed to satisfy their burden of showing the Defendants failed to pay all contributions owed by them under the CBAs and, thus, are not entitled to summary judgment. However, the Court denies the Plaintiffs' motion without prejudice with leave to renew upon a more complete summary judgment record. As a final matter, the Court notes that the Plaintiffs will not be entitled to attorneys' fees associated with this motion, but may recover attorney's fees related to the renewed motion in the event the Plaintiffs prevail.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Plaintiffs' motion for summary judgment is denied without prejudice with leave to renew upon a more complete summary judgment record. The summary judgment record should include evidence establishing that the Plaintiffs are entitled to the specific relief they seek, such as providing documentation with respect to the employees who Accra allegedly failed to make contributions for and the number of hours these employees worked. In this way, the Court will then be able to properly assess the Plaintiffs' claim for unpaid contributions allegedly owed by the Defendants to the Benefit Funds; and it is further

**ORDERED**, that there will be no payment for the legal work done with regard to this motion, but an award may be granted for the legal work done in connection with the Plaintiffs' renewed application in the event the Plaintiffs prevail.

**SO ORDERED.**

Dated: Central Islip, New York
January 2, 2014

>     */s/ Arthur D. Spatt*
>         ARTHUR D. SPATT
>     United States District Judge